■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HENRY SWINSON, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Chetta, J.), rendered April 12, 1983, convicting him of manslaughter in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Judgment affirmed.

Defendant was indicted, *inter alia,* for murder in the second degree as a result of his fatal shooting of Geraldine Pearsall. At trial defendant asserted a justification defense. He testified that Pearsall had attacked him with an ice pick, and she was shot during a struggle for the weapon. The jury convicted defendant, *inter alia,* of manslaughter in the first degree. The judgment should be affirmed.

Although the court's enunciation of the standard to be used in evaluating defendant's defense was, at best, confusing because it erroneously referred to an objective standard of review (*People v Miller,* 39 NY2d 543; *People v Wagman,* 99 AD2d 519), there was no timely objection which would have alerted the court to the flaw and allowed it to cure the defect. Accordingly, the error has not been preserved for appellate review (CPL 470.05 [2]). In light of the strong evidence of guilt, invocation of our interest of justice jurisdiction is not warranted. In this regard we note the following: (1) Although defendant alleged that the deceased had attacked him with an ice pick, an ice pick was never recovered from the scene, despite an extensive police search of the area shortly after the incident occurred for the 'gun used in the shooting. Otha Farrio, who arrived at the scene almost immediately following the shooting, testified that he did not see an ice pick in the deceased's hand or elsewhere at the scene; (2) The associate medical examiner testified that the deceased had been shot through the brain, from a distance beyond two feet, at a horizontal angle. This physical evidence is at strong odds with defendant's version of how the crime occurred during a struggle for the gun and the missing ice pick; (3) Defendant testified he carried the gun to protect himself because he worked in the South Bronx. The shooting occurred on an evening in which defendant was playing cards in Queens; (4) The deceased had embarrassed defendant in front of his friends just prior to the shooting incident; and (5) It is of some probative value that defendant fled the scene following the shooting (*People v Yazum,* 13 NY2d 302; *People v Anderson,* 99 AD2d 560). Under the totality of the circumstances, a reversal in the interest of justice is unwarranted.

We note that despite the inadequacies of the presentation of defendant's appellate counsel, we have carefully and independently reviewed the record on appeal. Our analysis is based upon a careful evaluation of the relative strengths and weaknesses of the prosecution's case and defendant's justification defense. Our determination to decline to exercise our interest of justice jurisdiction is premised solely upon our evaluation of the evidence introduced at the trial. Not every case in which sufficient evidence is adduced to warrant a justification charge

automatically requires an interest of justice reversal based upon an inadequacy in the charge.

During the course of the trial, a ballistics report admitted into evidence indicated that the gun used by defendant to shoot Pearsall contained "dum-dum" bullets which had been altered by having crosses scratched across their tips. The bullets themselves were also admitted into evidence and were available to the jurors for their inspection. On appeal defendant argues that various references to the altered bullets during summation and their use as a basis for cross-examining defendant's character witnesses deprived him of a fair trial. We do not agree. The references to the altered bullets in the summation were proper because the bullets were part of the evidence in the case, and their character was probative of whether defendant had intended to kill his victim, or whether he had intended to cause her serious physical injury. The intent to cause serious physical injury is an element of manslaughter in the first degree, and manslaughter in the first degree was charged to the jury. The questions asked of defendant's character witnesses with regard to the altered bullets were proper because the prosecutor had a reasonable basis for believing the truth of the matters he was asking about and the opinions of the witnesses might have been changed had they been aware that defendant possessed a gun with altered bullets (*People v Alamo*, 23 NY2d 630). In any event, objections were raised and erroneously sustained in all of the foregoing instances, and no further curative instructions were requested. Finally, although defendant denied knowledge that the gun he possessed contained altered bullets, his credibility presented an issue for the jury to resolve.

We have considered defendant's remaining contentions and find them to be without merit. Mollen, P. J., Thompson and Lawrence, JJ., concur.

Titone, J., concurs in part and dissents in part and votes to reverse the conviction for manslaughter in the first degree, and dismiss that count of the indictment without prejudice to the presentation of appropriate charges to a new Grand jury, and affirm the conviction for criminal possession of a weapon in the second degree, with the following memorandum: Defendant shot and killed his paramour during an argument on the street. Shortly after the incident, he turned himself into the police. At trial, he presented a justification defense, contending that he pulled out the weapon to repel the paramour, who was attacking him with an ice pick, and the gun accidentally fired when she lunged at him.

In instructing the jury on justification, the Trial Judge emphasized that the "standard that the law imposes to determine

that the defendant was justified in believing [that deadly physical force was about to be used against him] is what would an ordinary reasonable person at the time and place be justified in believing. You should determine whehter [*sic*] an ordinary reasonable person knowing the facts and circumstances and observing the acts and conduct of the victim, as you might find such circumstance and conduct to be[,] one [*sic*] justified in reasonably believing that Geraldine [the victim] was using or was about to use deadly physical force against the defendant and that as a consequence would be justified in believing that the offense of deadly physical force was necessary to defend himself".

As the majority concedes, there can be no question that the use of an objective standard was error (*e.g., People v Miller,* 39 NY2d 543; *People v Macon,* 110 AD2d 718; *People v Long,* 104 AD2d 902; *People v Wagman,* 99 AD2d 519; *People v Desmond,* 93 AD2d 822). "The court erred in enunciating an 'ordinary reasonable person' standard for the evaluation of defendant's actions, rather than having the jury consider what defendant himself thought" (*People v Wagman, supra,* at p 520). The majority declines to review the issue in the interest of justice, however, a decision I fear may rest on the failure of defendant's counsel — assigned by this court — to expressly raise the issue in the appellate brief.

An unbroken line of authority, only recently affirmed (*People v Fuller,* 108 AD2d 822), holds that "in cases where justification is the central issue to be decided" an "error [in the justification charge] warrants a new trial in the interests of justice" (*People v Fuller,* 74 AD2d 879; *see, People v Macon, supra; People v Long, supra; People v Wagman, supra,* at p 520; *People v Jenkins,* 93 AD2d 868, 869; *People v La Susa,* 87 AD2d 578; *People v Flores,* 75 AD2d 649; *People v Davis,* 74 AD2d 607). Interest of justice review is particularly warranted where an objective standard is erroneously employed because of "its potential for harm" (*People v Wagman, supra,* at p 520).

These decisions are ignored by the majority, which purports to focus on the "strong evidence" of guilt. It is evident from reading the record, however, that the issue of justification was the *only* issue in the case, defendant having turned himself into the police shortly after the incident, and that question presented a pure issue of credibility for the jury. Defendant took the stand and testified, *inter alia,* that the victim had attacked him on prior occasions. This testimony was corroborated by an independent witness and physical evidence. Although the ice pick was never discovered, this is hardly surprising inasmuch as the

scene was never cordoned off. In addition, the medical examiner's testimony concerning the powder burns is somewhat suspect given the victim's three-day hospital stay prior to her demise. In sum, it is enough to say that the issue of justification turns upon disputed facts. Since the jury was not presented with the proper yardstick, our prior precedents dictating reversal should be followed.

As I have indicated, appellate counsel has not urged the plainly erroneous justification charge as a basis for reversal. Although we are not bound by the parties' formulation of the issues (*Matter of Geneseo Cent. School [Perfetto & Whalen Constr. Corp.]*, 53 NY2d 306, 312, n 2; *Rentways, Inc. v O'Neill Milk & Cream Co.*, 308 NY 342, 349; *People v Danzy,* 104 AD2d 949, 953; Witkin, Manual on Appellate Court Opinions § 85, at 154), I do not think that we ought to affirm without further enlightenment from the defendant and the People, at the very least (*see, Matter of Geneseo Cent. School [Perfetto & Whalen Constr. Corp.], supra,* at p 312, n 2).

Be that as it may, I am convinced that appellate counsel's performance on this appeal is constitutionally inadequate (*see, Evitts v Lucey,* 469 US __, 105 S Ct 830; *People v Gonzalez,* 47 NY2d 606; *People v Ramos,* 108 AD2d 209). First, most of the arguments raised are belied by the record. For example, counsel urges that the court failed to charge the lesser included offense of manslaughter in the second degree. But the trial court did so. More to the point, counsel apparently never read the justification charge at all for he complains that the court improperly denied a request for an instruction that "the defendant's awareness of the victim's reputation for violence" be considered. Again, the court did give such a charge.

Further, the failure to raise the error in the justification charge is simply inexcusable. The issue required no esoteric research. Standard texts, such as the Pattern Jury Instructions (1 CJI [NY] 35.00, at 848), indicate that the charge was erroneous and numerous cases to that effect can be found in the annotations to the relevant sections in the Penal Law. Considering the frivolous nature of the points actually raised, the failure to press this claim can hardly constitute accepted or acceptable strategy (*cf. Jones v Barnes,* 463 US 745; *People v Ramos,* 108 AD2d 209, *supra; People v Kelly,* 110 AD2d 856).

Due to the obvious ineptitude of assigned counsel, we should reach the error in the justification charge in the interest of justice, or, alternatively, accord defendant a new appeal with new assigned counsel and a new brief (*People ex rel. Douglas v Vincent,* 50 NY2d 901; *People v Gonzalez,* 47 NY2d 606, *supra*).

To reject the issue out of hand, without adequate input from effective counsel, raises a serious constitutional question and, more important, it perpetrates a manifest injustice.

The error in the justification charge would not, however, affect the conviction for possession of a weapon (*People v Almodovar,* 62 NY2d 126; *People v Rodman,* 105 AD2d 812; *People v Fontaine,* 105 AD2d 710), and though several aspects of the trial give me pause, I perceive no other reversible error with respect to that count. Accordingly, I would reverse the conviction for manslaughter in the first degree, dismiss that count of the indictment without prejudice to the presentation of appropriate charges to a new Grand Jury, on constraint of current law (*People v Gonzalez,* 61 NY2d 633), and affirm the conviction for criminal possession of a weapon in the second degree.