People v Alston (2019 NY Slip Op 00410)





People v Alston


2019 NY Slip Op 00410


Decided on January 22, 2019


Appellate Division, First Department


Manzanet-Daniels, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 22, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick, J.P.
Rosalyn H. Richter
Sallie Manzanet-Daniels
Judith J. Gische
Peter Tom,JJ.


2975/14 

[*1]The People of the State of New York, Respondent,
v
Rickey Alston, Defendant-Appellant.



Defendant appeals from a judgment of the Supreme Court, New York County (Mark Dwyer, J.), rendered September 8, 2015, convicting him, after a jury trial, of criminal possession of a weapon in the third degree, menacing in the second degree and criminal mischief in the fourth degree, and imposing sentence, and from an order of the same court and Justice, entered on or about May 4, 2017, which denied his CPL 440.20 motion to set aside his sentence.




Robert S. Dean, Center for Appellate Litigation, New York (Benjamin Wiener of counsel), for appellant.
Rickey Alston, appellant pro se.
Cyrus R. Vance, Jr., District Attorney, New York (Malancha Chanda of counsel), for respondent.



MANZANET-DANIELS, J.


Although the statutory purpose of CPL 200.60 was not satisfied where the court arraigned defendant on a special information prior to jury selection in contravention of the plain wording of the statute, we are nonetheless obliged to affirm as defendant has failed to show any prejudice flowing from the statutory violation.
CPL 200.60(3) mandates that an arraignment on special information occur only "[a]fter commencement of the trial" (id.). The Criminal Procedure Law unequivocally holds that "[a] jury trial commences with the selection of the jury" (CPL 1.20[11]); see also People v Crespo, 32 NY3d 176 [2018]). Thus, arraignment of defendant on the special information prior to jury selection violated CPL 200.60.
The plain and unambiguous statutory language is "the best evidence of the Legislature's intent" (People v Andujar, 30 NY3d 160, 166 [2017] [internal quotation marks omitted]). A court cannot disregard plain statutory language simply because it concludes that an alternate [*2]procedure would be consonant with the policy underlying the statute. Courts do not possess the power to ignore the legislature (see People v O'Doherty, 70 NY2d 479, 487 [1987] [rejecting the People's argument that failure to adhere to the timing requirements of CPL 710.30 did not warrant appellate relief because the purpose of the statute was not "frustrated"; noting that such a ruling would "conflict with the plain language of the statute, which reflects a legislative policy determination with which the courts may not interfere"])[FN1]. It may well be that the legislature's general purpose in enacting CPL 200.60 was to avoid the prejudicial effect of having the prior offense proven before the jury. However, such a purpose does not support reading the timing requirement out of the statute. Allowing a defendant to wait until after the commencement of the trial ensures that he will have as much information as possible when forced to make the choice of admitting his prior conviction and relieving the People of its burden to prove it beyond a reasonable doubt; or denying the conviction and allowing the jury to learn about it.
Given defendant's repeated expressions of disagreement with the court's attempts to arraign him on the special information prematurely, it is difficult to understand what more he could have done to register his objection. We therefore find the issue preserved for appeal.
Despite the court's error, however, we are obliged to affirm because defendant has not shown any prejudice arising from the fact that he was required to decide whether to contest the prior conviction earlier than necessary. Defendant does not assert that he would have contested the conviction if he had been asked after jury selection. Thus, defendant's claims of prejudice are speculative.
We disagree with the dissent that the error was harmful such that a reversal is warranted. The dissent offers no authority for departing from harmless error analysis under these circumstances.
The court providently exercised its discretion in admitting a video recording of a restaurant's surveillance videotape, made by a police officer on her cell phone. The restaurant manager's testimony that the video was a fair and accurate depiction of what he had observed inside the restaurant on the night of the incident authenticated the video and laid a proper foundation for its admission (see People v Patterson, 93 NY2d 80, 84 [1999]), and no further authentication was necessary. It is of no moment that the cell phone video could be characterized as a videotape of a screen displaying another videotape, because an eyewitness authenticated it to the extent it depicted the relevant events.
Defendant was properly adjudicated a second felony offender based on a Washington D.C. drug conviction, and the court properly denied defendant's CPL 440.20 motion challenging that adjudication. The court properly examined the accusatory instrument because the Washington D.C. statute criminalizes several discrete acts, not all of which would constitute felonies in New York (see generally People v Jurgins, 26 NY3d 607, 613-614 [2015]; People v Muniz, 74 NY2d 464 [1989]; People v Gonzalez, 61 NY2d 586 [1984]). In light of that accusatory instrument, the prior conviction constituted the equivalent of a New York felony. To the extent defendant raises additional claims in his pro se brief, we find those claims [*3]to be unpreserved, unreviewable and without merit.
Accordingly, the judgment of the Supreme Court, New York County (Mark Dwyer, J.), rendered September 8, 2015, convicting defendant, after a jury trial, of criminal possession of a weapon in the third degree, menacing in the second degree and criminal mischief in the fourth degree, and sentencing him, as a second felony offender, to an aggregate term of two to four years, and
order, same court and Justice, entered on or about May 4, 2017, which denied defendant's CPL 440.20 motion to set aside his sentence, should be affirmed.
All concur except Renwick, J.P. who dissents in part in an Opinion.




RENWICK, J.P. (dissenting in part)


I respectfully dissent from the part of the majority's decision that affirms defendant's conviction of the crime of criminal possession of a weapon in the third degree. I concur with the majority's finding that the court erred in asking defendant before jury selection - instead of after the trial commenced as set forth in CPLR 200.60(3) - whether he wished to admit his prior conviction which would elevate the weapon possession charge to a felony. However, unlike the majority, I would find that the error was inherently harmful and that defendant is therefore entitled to a new trial on the weapon possession conviction.
The majority's application of traditional harmless error analysis, under People v Crimmns (36 NY2d 230 [1975]), to the situation here is inappropriate. A nonconstitutional error may also be immune from traditional harmless error analysis. For instance, where a statute contains a legislative mandate, the failure to follow it may not be deemed harmless since a presumption exists that the legislature intended such mandate be followed because the error is inherently harmful. For example, CPL 300.10(2) obligates a trial judge, upon request, to charge a jury not to draw an adverse inference when the defendant does not testify (People v Britt, 43 NY2d 111 [1977]; see also People v Wilson, 156 AD2d 743 [2nd Dept 19890 [same]). In addition, CPL 300.10(3) mandates that the trial judge charge the jury, in language prescribed by CPL 300.10 (3)), on the consequences of a verdict of not responsible by reason of insanity (see e.g. People v Kinitsky, 119 AD2d 159 [2nd Dept 1986]). The failure to give these charges requires reversal, without traditional harmless error analysis, because of the apparent legislative policy that the error is inherently harmful.
Similarly, here the failure to strictly follow a legislative mandate, pursuant to CPL 200.6, was inherently harmful. Indeed, the majority acknowledges that "allowing a defendant to wait until after the commencement of the trial ensures that he will have as much information as possible when forced to make the choice of admitting his prior conviction and relieving the People of its burden to prove it beyond a reasonable doubt." Hence, the majority is acknowledging that what happens at jury selection can inform a defendant's decision of whether to admit or contest a prior conviction. However, the majority concludes that defendant does not point to anything that occurred during jury selection that would have affected his decision.
What is overlooked is that by forcing a defendant to decide — whether to admit or contest a prior conviction — before jury selection, totally precludes defense counsel from assessing the prospective jurors on the issue during jury selection. For a defense counsel, jury selection plays an important role. Attorneys invariably desire to select jurors that are open-minded, and not biased or unsympathetic to their client's position. Attorneys are free to ask prospective jurors questions that are relevant to the facts of the case. Therefore, developing a series of questions that are helpful to the attorney, in identifying jurors that are open-minded, not biased or unsympathetic to the client's position in the case, is an essential aspect of voir dire.
Accordingly, where an attorney still has the option to weigh whether to expose a client's conviction to the jury, he would fashion a voir dire to reveal whether prospective jurors would be capable of impartially evaluating a defendant's prior conviction. However, forcing a defendant to decide whether to admit a prior conviction before jury selection begins, eliminates questioning on this issue and deprives the defendant of the right the statute provides. Importantly, whatever voir dire transpires thereafter is no longer one geared to determine how a jury might respond to learning of a defendant's prior conviction, because forcing defendant to choose prior to voir dire stripped defendant of this opportunity.
Judgment, Supreme Court, New York County (Mark Dwyer, J.), rendered September 8, 2015, and order, same court and Justice, entered on or about May 4, 2017, affirmed.
Opinion by Manzanet-Daniels, J. all concur except Renwick, J.P. who dissents in part in an Opinion.
Renwick, J.P., Richter, Manzanet-Daniels, Gische, Tom, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 22, 2019
CLERK



Footnotes

Footnote 1:O'Doherty involved a different statute where excusing compliance on the ground of absence of prejudice to the defendant would have the effect of relieving the prosecution of its express burden of proving "good cause." Nonetheless, the case is relevant to the extent it makes patent that a court cannot simply ignore explicit statutory language because it finds the statutory purpose to be effectuated in any given case.